FILED

July 14, 2015

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 12:15 PM



# COURT OF WORKERS' COMPENSATION CLAIMS
## AT MURFREESBORO

| | | |
|---|---|---|
| Jimmy E. Dyer | ) | Docket No.: 2015-05-0078 |
|       Employee, | ) | |
| v. | ) | State File No.: 27265-2015 |
| | ) | |
| Tankersley Concrete | ) | Date of Injury: March 13, 2015 |
|       Employer, | ) | |
| And | ) | Judge: Dale Tipps |
| | ) | |
| Builders Mutual | ) | |
|       Insurance Carrier. | ) | |
| | ) | |

---

## EXPEDITED HEARING ORDER

---

THIS CAUSE came to be heard before the undersigned Workers' Compensation Judge on June 29, 2015, upon the Request for Expedited Hearing filed by Jimmy Dyer (Mr. Dyer), the Employee, on June 2, 2015, pursuant to Tennessee Code Annotated section 50-6-239 (2014) to determine if the Employer, Tankersley Concrete (Tankersley) is obligated to provide medical and/or temporary disability benefits. Considering the positions of the parties, the applicable law, and all of the evidence submitted, the Court concludes that Mr. Dyer is entitled to a medical evaluation for the purpose of obtaining an opinion on the medical causation of his left shoulder injury.

## ANALYSIS

### Issues

*Whether Mr. Dyer sustained an injury on March 13, 2015, arising primarily out of and in the course and scope of his employment with Tankersley Concrete; and*

*If so, whether Mr. Dyer is entitled to medical and/ or temporary disability benefits.*

1

**Evidence Submitted**

The Court admitted into evidence the exhibits below:

1. Affidavit of Jimmy E. Dyer
2. Medical Records from Fast Pace Medical Clinic, PLLC (Fast Pace) (25 pages)
3. March 30, 2015, Record from Benchmark Physical Therapy
4. Delivery Ticket from Medi-Quip, Inc.
5. Medical Equipment Prescription from FLA Orthopedics
6. Cecil Wayne Hickman's Declaration Made Under Penalty of Perjury
7. Rodolpho Carmona's Declaration Made Under Penalty of Perjury
8. C-41 Wage Statement.

The Court designated the following as the technical record:

- Petition for Benefit Determination (PBD), April 10, 2015,
- Dispute Certification Notice (DCN), May 5, 2015,
- Request for Expedited Hearing, June 2, 2015,
- Order of Transfer, June 24, 2015, and
- Tankersley's Pre-Hearing Brief.

The Court did not consider attachments to the above filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in the above filings or any attachments thereto as allegations unless established by the evidence.

The following witnesses provided in-person testimony:

- Mr. Jimmy Dyer and
- Ms. Kathy Lee Anderson Dyer.

**History of Claim**

Mr. Dyer is a forty three (43)-year-old resident of Bedford County, Tennessee. *See* PBD. He testified his left arm began hurting as he stacked concrete molds in the course of his work for Tankersley on Friday, March 13, 2015. *Id.* The pain worsened, but he kept working for the rest of the day. He did not report the problem to his employer

because he thought he had just overworked his shoulder and felt it would get better on its own over the weekend. The next morning, however, his shoulder was so stiff and painful that he could not move his left arm.

Mr. Dyer testified he spoke to Mr. Tankersley, the owner of the business, on Monday and told him about his shoulder problem. Mr. Tankersley told him to take the day off. When his arm was not any better after two days off work, Mr. Dyer told Mr. Tankersley on Wednesday, March 18, 2015, that he needed to see a doctor. Tankersley Concrete began providing medical treatment at Fast Pace.

Mr. Dyer saw a nurse practitioner, Robert Reeves, on March 18, 2015. He reported the onset of shoulder pain on Friday after lifting heavy concrete molds. Mr. Reeves diagnosed a sprain/strain of the rotator cuff and restricted Mr. Dyer from lifting with his left arm. *See* Exhibit 2, (March 18, 2015 office note). Mr. Dyer returned on March 26, 2015, reporting that his condition had not changed. Mr. Reeves prescribed physical therapy for shoulder impingement. He also returned Mr. Dyer to work without restrictions beginning March 30, 2015. *Id.* On March 30, 2015, Mr. Dyer saw physician assistant Sarah Bennett and told her that his condition had not improved and that he had not been to physical therapy. Ms. Bennett noted tenderness and reduced range of motion. She restricted Mr. Dyer to right hand duty only until April 13, 2015. She also renewed the physical therapy referral, recommended daily anti-inflammatories, and prescribed a sling for Mr. Dyer's left arm. *Id.* (March 30, 2015 office note).

Mr. Dyer testified that Tankersley had no light duty available while he was under medical restrictions. Fast Pace ultimately referred him to an orthopedic specialist, but Tankersley denied his claim before he saw an orthopedic doctor. He is unable to see an orthopedist under his health insurance and has not worked anywhere since his injury.

On cross-examination, Mr. Dyer acknowledged prior right shoulder problems, but denied a left shoulder injury until March 13, 2015. He further denied telling Mr. Tankersley that his shoulder began hurting on Saturday afternoon, but insisted he told Mr. Tankersley that it was hurting and stiff when he woke up. He reiterated that he did not tell his supervisor, Rodolpho Carmona, about the injury on the day it occurred because he did not think it was serious and felt that it would improve on its own.

Mr. Dyer also denied that he moved into a new house over the weekend following March 13, 2015. He testified that the move occurred before his date of injury, and he did none of the heavy work then because of his right shoulder injury. He acknowledged that he asked Wayne Hickman to help him move, but again, this was before the week of his

injury.

Mr. Dyer admitted that he told Mr. Carmona on March 13, 2015, that it would be his last day at work. However, he explained that everyone was joking around and pretended that that they would not return after the weekend. He also told Mr. Carmona that he would see him on Monday.

Kathy Lee Anderson Dyer is Mr. Dyer's wife. She testified that she and Mr. Dyer moved into a new trailer sometime during the first week of February. They asked Wayne Hickman to help them, but he was unavailable. Everything was moved into their new place before March 13, 2015.

In his Declaration Made Under Penalty of Perjury, Mr. Hickman stated that, on March 13, 2015, Mr. Dyer asked him to help him move over the weekend. Mr. Hickman did not help with the move, but called Mr. Dyer during the following week. Mr. Dyer said the move took place, but he did not move anything because his arm was hurting. Mr. Dyer stated that he hurt his shoulder because he was working too fast. *See* Exhibit 6.

Mr. Carmona, in his Declaration Made Under Penalty of Perjury, stated that Mr. Dyer told him on March 13, 2015, that "this was his last day" because he was quitting. Mr. Dyer never mentioned anything about hurting his arm. *See* Exhibit 7.

Tankersley denied the claim on April 10, 2015. Mr. Dyer filed a PBD on April 10, 2015, seeking medical and temporary disability benefits. The parties did not resolve the disputed issues through mediation and the Mediation Specialist filed the DCN on May 5, 2015.

### Mr. Dyer's Contentions

Mr. Dyer contends he sustained a left shoulder injury in the course and scope of his employment with Tankersley. He requests that the Court order Tankersley to provide medical care with an orthopedist, as recommended by the Fast Pace personnel. He also seeks an order for temporary disability benefits for the period of time when he was unable to work and for the period when Tankersley failed to provide light duty within his medical restrictions.

### Tankersley's Contentions

Tankersley contends that it properly denied the claim on compensability grounds.

It argues that Mr. Dyer failed to carry his burden of proving that his injury arose primarily out of and in the course and scope of employment with Tankersley. It avers that Mr. Dyer has not met his statutory obligation to identify a specific incident causing the injury, as well as the time and place of the occurrence. Tankersley also argues that the evidence indicates another cause of Mr. Dyer's injury because no witnesses corroborated his story and because he most likely injured himself in the move to a new residence the weekend after the alleged work incident.

In the event that Mr. Dyer's injury is compensable, Tankersley contends that he is not entitled to any temporary disability benefits. It argues that Mr. Dyer has not demonstrated that he is totally disabled due to his alleged injury. Further, he is not entitled to temporary partial disability benefits because he terminated his own employment.

### Findings of Fact and Conclusions of Law

*Standard Applied*

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2014). An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.*

*Factual Findings*

Mr. Dyer experienced pain in his left shoulder while lifting and stacking concrete molds at work on March 13, 2015. He gave verbal notice of the injury to Tankersley on March 18, 2015, and received authorized care through Fast Pace Medical Clinic, where he received treatment for a sprain/strain of the rotator cuff. Tankersley denied the claim on April 10, 2015.

*Application of Law to Facts*

In order for an injury to be compensable, it must be accidental. Under the Tennessee Workers' Compensation Law, an injury is accidental "only if the injury is caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence." Tenn. Code Ann. § 50-6-102(13)(A) (2014). "An injury "arises primarily out of and in the course and scope of employment" only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes[.]" Tenn. Code Ann. § 50-6-102(13)(B) (2014).

Tankersley contends that Mr. Dyer has not identified a specific incident causing the injury, nor specified the time of the occurrence. In effect, it argues that reporting the onset of symptoms during one's shift is insufficiently specific to meet the new definition of "injury." Tankersley presented no authority for this argument, which is not surprising in view of the relatively recent change to the statute. However, the suggested interpretation seems unrealistically narrow. The plain meaning of a "set of incidents" would appear to include an injury that, absent any other explanation, manifests itself while an employee is performing his work duties. In the absence of any authority to the contrary, the Court finds that the initial onset of symptoms during an employee's work shift is sufficiently specific to meet the current definition of "injury."

Mr. Dyer lifted, stacked, and flipped heavy concrete molds at Tankersley and felt his left shoulder begin to throb and burn. He testified that when he got out of bed the next morning, he could not even move his arm. The Court finds that Mr. Dyer carried his burden of proving a specific set of circumstances that caused his shoulder injury.

Tankersley correctly asserts that Mr. Dyer has not carried his burden of proving that his injury arose primarily out of his employment. The missing element is medical causation, as the authorized providers failed to provide a causation opinion. The Court holds that the lack of a causation opinion is not immediately fatal to Mr. Dyer's request for temporary medical benefits. Enforcing such a high burden early in his claim would yield the unreasonable result of prohibiting Mr. Dyer from receiving medical care for his shoulder condition without first securing an expert opinion on medical causation.

In *McCord*, the Workers' Compensation Appeals Board held in part:

> [A]n employee need not prove each and every element of his
> or her claim by a preponderance of the evidence at an

expedited hearing to be entitled to temporary disability or medical benefits, but must instead present evidence sufficient for the trial court to conclude that the employee would likely prevail at a hearing on the merits in accordance with the express terms of section 50-6-239(d)(1). A contrary rule would require many injured workers to seek out, obtain, and pay for a medical evaluation or treatment before his or her employer would have any obligation to provide medical benefits. The delays inherent in such an approach, not to mention the cost barrier for many workers, would be inconsistent with a fair, expeditious, and efficient workers' compensation system. *See* Tenn. Code Ann. § 4-3-1409(b)(2)(A) (2014).

*McCord*, at *9-10.

Tennessee law requires an employer to provide "free of charge to the employee such medical and surgical treatment…made reasonably necessary by accident as defined in this chapter[.]" Tenn. Code Ann. § 50-6-204(a)(1)(A) (2014). Mr. Dyer has an injury. At this point, however, it is unclear from a medical standpoint whether the work caused the injury. Mr. Dyer, therefore, has a right to a causation opinion to determine whether his injury is work-related. The Court, therefore, finds that Tankersley must provide Mr. Dyer an additional medical evaluation for an opinion on medical causation. Tankersley submitted no evidence that that it ever provided Mr. Dyer with a panel of physicians and Mr. Dyer testified that Fast Pace referred him to an orthopedic specialist. The causation opinion, therefore, shall come from a physician selected by Mr. Dyer from a panel of orthopedists provided by Tankersley. If medical causation is established, Tankersley shall provide continuing, reasonable and necessary care, with the panel physician.

Tankersley argues that the evidence indicates another cause of Mr. Dyer's injury. It suggests that Mr. Dyer actually injured himself while moving to a new residence the weekend after his alleged injury date. This argument is not persuasive, as Tankersley submitted no evidence to support this scenario. Both Mr. and Ms. Dyer testified that the move occurred some weeks prior to the reported work injury date and that Mr. Dyer did not take part in any of the more strenuous moving. The written statement of Mr. Hickman, while it disputes the moving date, corroborates most of the Dyers' testimony. Mr. Hickman stated that Mr. Dyer told him he did not move anything because his arm was hurting. Further, Mr. Dyer told him he injured his shoulder at work. During the hearing, Tankersley questioned Mr. Dyer about statements he allegedly made to Mr.

7

Tankersley regarding when his symptoms appeared. Mr. Dyer testified unequivocally that he told Mr. Tankersley that he woke up with severe symptoms on Saturday morning. Tankersley submitted no written statement or other evidence to rebut this testimony.

Because Mr. Dyer has not proven medical causation of his injury, he has not established entitlement to temporary disability benefits at this time.

**IT IS, THEREFORE, ORDERED** as follows:

1. Tankersley shall provide Mr. Dyer with a panel of orthopedic physicians as required by Tennessee Code Annotated section 50-6-204 (2014) and shall schedule and pay for the orthopedic evaluation for the purpose of obtaining an opinion on the medical causation of Mr. Dyer's left shoulder injury. In the event medical causation is established, Tankersley shall provide continuing, reasonable and necessary care with the panel physician as required by Tennessee Code Annotated section 50-6-204 (2014). Medical bills shall be furnished to Tankersley or its workers' compensation carrier by Mr. Dyer or medical providers.

2. Mr. Dyer's claim for temporary disability benefits is denied at this time.

3. This matter is set for Initial Hearing on September 3, 2015, at 9:00 a.m.

4. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven (7) business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2014). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh (7th) business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

5. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

8

**ENTERED this the 14th day of July, 2015.**

_____
**Dale Tipps, Judge**
**Court of Workers' Compensation Claims**

Initial Hearing:

An Initial Hearing has been set with **Judge Dale Tipps, Court of Workers' Compensation Claims. You must call 615-741-2112 or toll free at 855-874-0473 to participate in the Initial Hearing.**

**Please Note:** **You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk _within seven (7) business days_ of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten (10) calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten

9

(10) calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a statement of the evidence within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. The Judge must approve the statement of the evidence before the Court Clerk may submit the record to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appealing party shall file such position statement with the Court Clerk within three (3) business days of the filing of the Expedited Hearing Notice of Appeal, specifying the issues presented for review and including any argument in support thereof. If the appellee elects to file a response in opposition to the interlocutory appeal, appellee shall do so within three (3) business days of the filing of the appellant's position statement.

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the __14th__ day of July, 2015.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Jimmy Dyer | | | X | Dixierider04@yahoo.com |
| Devin Williams | | | X | drw@psw-law.com |

_____

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

11